## THOMPSON *v.* HALL.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF NEW YORK.

No. 186.   Argued March 6, 7, 1889. — Decided March 18, 1889.

Letters patent No. 232,975, granted October 5, 1880, to Henry G. Thompson, as assignee of the inventor, Moses C. Johnson, for an improvement in cutting-pliers, the claim of which is, "The body, composed of the side plates, *a b*, the independent fulcra 2 3 4 5 for the jaw-levers and hand-levers, the jaw-levers provided with cutting edges and with lips *e*, and the hand-levers having short arms *g' h'*, and a prong and notch always in engagement as described, combined with the V-shaped spring, held, as described, by the lips of the jaw-levers, all as and for the purpose set forth," are invalid, because Johnson was not the first inventor of the combination claimed in the patent.

IN EQUITY for infringement of letters patent. Decree dismissing the bill. Complainant appealed. The case is stated in the opinion.

*Mr. Horace Barnard* for appellant.

*Mr. Amos Broadnax* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is a suit in equity, brought in the Circuit Court of the United States for the Eastern District of New York, by Henry G. Thompson against Thomas G. Hall, J. F. Oliver, Samuel Leopold and David L. Harris, for the alleged infringement of letters patent No. 232,975, granted October 5, 1880, to the plaintiff, as assignee of the inventor, Moses C. Johnson, for an improvement in cutting-pliers, on an application filed June 2, 1880.

The specification, drawings and claim of the patent are as follows:

"This invention relates to cutting-pliers, and is an improvement on that class of pliers represented in United States patent

No. 209,677, dated November 5, 1878, granted to T. G. Hall, to which reference may be had. In that invention either of the two hand-levers may be turned on its pivot without turning the other, and the tool-body formed by the face or covering plates is permitted to vibrate, or turns more or less, with relation to the handles, and the central space between the cutting-faces of the jaw-levers, when the pliers are taken in the hand to be used, drops more or less out of line with the central line of the handles, making, as it were, a loose joint midway between the ends of the pliers.

Fig. 1.

Fig. 2.

"One of the objects of my invention is to construct a stiff pair of pliers, or pliers in which the hand and jaw-levers shall each be compelled to move positively in an opposite direction to the movement of its fellow, or a pair of pliers in which the tool-body shall not of itself swing or vibrate upon the pins or studs holding the hand-levers.

" In the patent above referred to, the end of wire or other thing cut off by the cutters drops into and injures the spring that opens the jaw-levers. This I obviate by providing each jaw-lever with a lip to cover or bridge the space between the jaws, as the jaw-levers are closed.

" My invention consists in the combination and arrangement of parts for effecting these ends, as hereinafter specified and claimed.

" Figure 1 represents, in side elevation, a pair of cutting-pliers containing my improvements; and Fig. 2, a like view with one of the body or side plates removed:

" The body of the pliers is composed of two side plates, $a$ $b$. These side plates are fixed together by the screws 2 3 4 5. Of these screws, those 2 3 are the fulcra of the jaw-levers $c$ $d$, having at their ends the usual cutters or cutting-surfaces $c'$ $d'$. Each of these jaw-levers has a lip $l$, and the end of one meets the end of the other lip just as or just before the two cutting-edges $c'$ $d'$ separate the wire or other metal end to be cut off by them, thus closing the space between the said jaw-levers and side plates, in which is placed the spring $f$, and preventing the entrance into said space of hard pieces of wire or other articles that would clog the pliers. These lips also serve another essential purpose — viz., that of holding the ends of the spring from displacement, and obviating the employment of a separate pin or stud to hold the said spring at one end, as heretofore common.

" The screws 4 5 serve as the fulcra for the hand-levers $g$ $h$, having short arms $g'$ $h'$, to act upon the ends of the longer arms of the jaw-levers and turn them on their fulcra to close the jaws and bring the cutting-edges together. The spring $f$ opens the jaws the instant the clasping pressure on the hand-levers is relaxed.

" In order to move the jaw-levers equally at all times and prevent the jaw-levers and body of the pliers turning on the handles, I have provided one hand-lever with a prong $m$, having a rounded end that enters a rounded notch in the opposite lever. This one prong and its notch are always in engagement, and so connect the two levers that the body of the pliers

cannot vibrate on the screws 4 5, but, on the contrary, the two levers may turn each on its own pivot, both levers always turning the same distance, but in exactly opposite directions. This connection between the two hand-levers, as described, insures a stiff pair of pliers, that can be handled more readily and accurately than the old form of cutting-pliers referred to, and which are more positive as to the movement of the cutting-jaws.

"I am aware, in bolt-cutters, where the short ends of the hand-levers are jointed with the long ends of the cutting-jaw levers, that a series of teeth or cogs have been interposed to cause the hand-levers to be geared together; but in such bolt-cutters one single tooth and notch would not operate to always keep the two hand-levers locked together as to their movement in unison, as is the case with my one prong, *m*, rounded at its end and inserted within a rounded notch. I claim —

"The body, composed of the side plates, *a b*, the independent fulcra 2 3 4 5 for the jaw-levers and hand-levers, the jaw-levers provided with cutting-edges and with lips *e*, and the hand-levers having short arms *g' h'*, and a prong and notch always in engagement, as described, combined with the V-shaped spring, held, as described, by the lips of the jaw-levers, all as and for the purpose set forth."

One of the defences set up in the answer is, that Johnson and Thompson surreptitiously obtained the patent in fraud of the rights of the defendants; that the defendants are trustees and directors of a New York corporation, known as the Interchangeable Tool Company; that that corporation was organized in August, 1878, for the purpose of manufacturing cutting-pliers or nippers, under letters patent No. 209,677, granted to the defendant Hall, November 5, 1878; that Hall invented certain improvements upon such pliers, and immediately described and explained them to the officers of the company; that the company thereupon caused a model of them to be made, embracing such improvements; that Johnson was employed to make such model pliers for the company, and made them for the company while in its employ, and under the direction of Hall; that Johnson was in the employ of the company, in making such pliers, from April 20, 1879, until May 1, 1880;

during which time the company made and sold upwards of 30,000 of such pliers, with the knowledge and consent of Johnson, and without any objection on his part, and without notice that he claimed to be the inventor of the whole or any part of such pliers, or intended to apply for a patent for the same; that Hall was the first and original inventor of said original cutting-pliers and of said improvements thereon, and assigned to the company the whole of the patent of November 5, 1878, immediately on its issue, and also the whole of the said improvements upon such cutting-pliers; that Johnson, after so being in the employ of the company for one year, was dismissed from its service, and thereupon, as the result of a conspiracy between Thompson, Johnson and one Gustam, Johnson falsely claimed that he was the first and original inventor of said improvements, and applied for a patent therefor, and sold his pretended claim to the invention to Thompson; and that Johnson, without the knowledge of Hall, or of the other defendants, or of the company, applied for a patent for said improvements, falsely alleging that he was their first and original inventor, and surreptitiously obtained said patent, No. 232,975, for said invention of Hall, and for an improvement upon the pliers so patented November 5, 1878.

There was a replication to this answer, proofs were taken, and the Circuit Court entered a decree dismissing the bill, from which the plaintiff has appealed. In its opinion (25 Fed. Rep. 906) the Circuit Court stated, that the question at issue was whether the combination covered by the claim of the plaintiff's patent was invented by Johnson while he was an employé of the corporation; that the plaintiff had sought to prove that a model produced by him, known as Exhibit C, was made by Johnson while he was in the employ of the company; that, on the other hand, the defendants had sought to prove that that model was not made by Johnson while he was employed by the company, but after he had been discharged from its employ, and for the purpose of supporting a fraudulent claim to an invention really made by Hall, and which claim had been put forth by Johnson for the first time after he had been discharged from the service of the company; and that, upon a

full consideration of all the evidence, the conclusion of the court was, that Exhibit C was not made while Johnson was a workman for the company, but was made subsequently to his leaving its employment, and that he was not the first inventor of the combination claimed in the patent issued to the plaintiff.

The testimony is voluminous and contradictory, and, without discussing it, it is sufficient to say that we are of opinion that the evidence establishes the conclusion reached by the Circuit Court, and that the decree must be affirmed; and it is so ordered.

*Affirmed.*